**NOT FOR PUBLICATION**                                         **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                             :
SONIA I. JIMENEZ,                            :
                                             :
                        Plaintiff,           :        Civil Action No. 07-3556 (JAP)
                                             :
              v.                             :
                                             :
MICHAEL J. ASTRUE,                           :
COMMISSIONER OF SOCIAL                       :        **OPINION**
        SECURITY                             :
                                             :
                      Defendant.             :
_____:

APPEARANCES:

Abraham S. Alter, Esq.
Langston & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
Attorney for Plaintiff

Christopher J. Christie
United States Attorney
Sixtina Fernandez
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3902
New York, NY 10278
Attorneys for Defendant

PISANO, District Judge.

This matter comes before the Court pursuant to Title II and XVI of the Social Security

Act ("the Act"), 42 U.S.C. § 405(g) and 1383(c)(3) .  Plaintiff Sonia Jimenez ("Plaintiff") seeks

review of the final decision of the Commissioner of the Social Security Administration

("Commissioner") who denied her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI").  The issue presented is whether the Commissioner's decision to deny Plaintiff's application for DIB and SSI is supported by substantial evidence.  Because the Court finds that the record does not provide substantial support for the Commissioner's denial, the Court remands the Commissioner's decision.

## I.    BACKGROUND

### A. Procedural History

On February 22, 2004, Plaintiff filed an application for DIB and SSI. (Administrative Record ("R.") 68-70, 261-62).  The Social Security Administration (the "SSA") denied Plaintiff's claim initially and upon reconsideration, as did the Administrative Law Judge Daniel M. Shellhamer ("ALJ") in a hearing decision issued on August 31, 2006.  (R. 24).  Plaintiff requested a review of  the ALJ's decision by the Social Security Appeals Council (the "Appeals Council") on October 9, 2006.  (R. 10).  On December 1, 2006, the Appeals Council denied Plaintiff's request for a review.  (R. 6).  On July 2, 2007, the Appeals Council granted Plaintiff an extension of time to file a civil action.  (R. 5).  Plaintiff filed this action challenging the final decision on July 31, 2007.

### B. Factual History

### 1. Plaintiff's Background

Plaintiff was born on June 11, 1954.  (R. 68).  She moved from Puerto Rico to the United States at age 15 and has an eleventh grade education.  (R. 80, 170).  She asserts that she

has been disabled since January 22, 2004.[1]  (R. 68).  Prior to her disability onset in January 2004,

Plaintiff had been employed in several different jobs, none of which lasted for more than one

year.  (R. 89).  She was most recently employed as a housekeeper/babysitter where her daily tasks

involved caring for two infants.  (R. 90).  In addition to her recent employment, her previous

work history includes: cashier at a grocery store, teacher's aide at a nursery school, janitorial

worker, dishwasher/cook, assembly line worker at a sprinkler company and electrical warehouse,

and a sewing machine operator.  (R. 89).

### 2. Plaintiff's Medical History

### a. Plaintiff's Testimony

Plaintiff's chief physical complaint is pain in her chest, feet, back, neck, leg and hands.

(R. 100-106, 274, 277).  She testified that her leg pain stems from a previous knee operation and

her foot pain was caused by an operation on her right foot.  (R. 274-75).  This pain, along with

her neck, chest and hand pain, limits her ability to drive and work.  (R. 275, 276-77).  She further

testified that she takes Skelaxin, Mobic and Ultram to alleviate her symptoms.  (R. 278-79).

In addition to physical pain, Plaintiff suffers from depression.  Plaintiff testified that she

was recently divorced from her husband and now lives alone.  (R. 274, 281).  She attributed her

divorce to her depression and her inability to work.  (R. 281).  She testified that she was

prescribed Lexapro to treat her depression symptoms.  *Id.*

### b. Medical Evidence of Plaintiff's Physical Impairments Considered by the ALJ

### 1. Dr. Rubin Raza

---

[1]In her disability application Plaintiff submitted that her disability onset date was February 28, 2003.  In the hearing before the ALJ, Plaintiff amended this date to January 22, 2004.  (R. 272).

Dr. Rubin Raza, Plaintiff's family doctor, began treating Plaintiff in August 1997.  After complaining of back pain for several years, Dr. Raza ordered an MRI of her cervical spine on February 19, 2004, which revealed normal functioning.  (R. 168).  The records indicate that Plaintiff did not see Dr. Raza after February 19, 2004.

On April 21, 2006, Dr. Raza completed a Residual Functional Capacity Questionnaire.  He listed Plaintiff's symptoms as fatigue, pain in the back of the neck and upper shoulders. (R. 242).  He stated that emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations.  (R. 243).  The doctor did not believe that Plaintiff's pain would interfere with her ability to pay attention or to concentrate, but he did indicate that her physical impairment could lead to depression and psychological limitations.  *Id.*  In assessing her physical ability, Dr. Raza indicated that Plaintiff can sit for approximately 30 minutes, can stand for approximately 45 minutes, and can stand/walk for about 4 hours total in an 8 hour work day.  (R. 244).  The doctor found that, if able to work, Plaintiff would need to take unscheduled breaks during an 8 hour work day and that she had significant limitations in repetitive reaching, handling and fingering.  (R. 244-45).

**2. Dr. Adrian Didita**

Dr. Didita performed an orthopedic examination of Plaintiff on June 18, 2004.  (R. 174).  She reported that for the last 4-5 years Plaintiff complained of neck pain that radiated toward her right shoulder and lower back along with bilateral knee pain and a long history of left-sided ankle pain.  *Id.*  These conditions were aggravated by walking, climbing stairs, lifting and carrying.  *Id.*  Dr. Didita noted that Plaintiff used Aleve on an as needed basis to mitigate the pain.  *Id.*  Plaintiff told Dr. Didita that she was able to cook, clean and shower/dress herself independently, but was

4

not able to do laundry or shop due to her pain.  (R. 175).   Dr. Didita found that her gait was

normal, she could walk on her heels and toes, albeit with some difficulty, and she could squat.

*Id.*  The exam revealed that she had a decreased range of motion in her cervical spine and

thoracic/lumbar spine.  *Id.*  However, Plaintiff had a full range of motion in her upper and lower

extremities and her hand/finger dexterity were intact.  (R. 175-76).  Based on his examination,

Dr. Didita diagnosed Plaintiff with a mild degenerative arthritis of the cervical spine,

lumbosacral spine, knees and left ankle.  *Id.*  The doctor concluded that Plaintiff has a "mild

restriction for prolonged standing and walking and mild restrictions ... for squatting and kneeling

because of arthritis of the knee," and a "mild restriction for heavy lifting and carrying because of

the probable arthritis of the lumbosacral spine."  (R. 176).

### 3. State Agency Doctor

On August 4, 2004, a state agency doctor examined Plaintiff.  (R. 179).  The doctor found

that Plaintiff could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry

10 pounds.  (R. 180).  Additionally, the Plaintiff could stand, sit, and/or walk for a total of about

6 hours in an 8 hour workday and had an unlimited ability to push and/or pull.  *Id.*  The doctor

further concluded that Plaintiff could occasionally climb, stoop, kneel, crouch and crawl, and

could frequently balance.  (R. 181).

### 4. Dr. A. Abud

Plaintiff was treated by Dr. Abud in 2005.  During her first visit on March 25, 2005, she

complained of pain spanning from her neck through her upper extremities, as well as lower back

pain.  (R. 241).  At her next visit on April 12, 2005, Plaintiff once again complained of pain in

the low back and lower extremities.  (R. 240).  The doctor reviewed a December 7, 2004 MRI of

the cervical spine that revealed evidence of a C6-7 small disc herniation.  *Id.*  The doctor

suggested an MRI of the lumbar spine to further evaluate her condition.  *Id.*  On May 3, 2005, Dr.

Abud reviewed the MRI of the lumbar spine and found it to be within normal limits.  (R. 239).

After Plaintiff further complained of neck pain, the doctor suggested a C6-7 anterior discectomy

based on her December 7, 2004 MRI.  *Id.*  The record does not indicate that Plaintiff followed up

on Dr. Abud's recommendation.

### 5. Dr. Aurora Dela Rosa

Plaintiff was first seen by Dr. Dela Rosa on January 1, 2005.  (R. 256).  The doctor

diagnosed her with: chronic cervical and lumbar pain with recurrent acute exacerbation; cervical

and lumbar myofascial pain dysfunction; possible spinal degenerative disc disease; cervical

radiculitis; lumbosacral radiculitis; being overweight; feet pain due to flat medial arches; and

depression.  (R. 257).  Dr. Dela Rosa recommended trigger point injections and physical therapy.

*Id.*

In a follow up visit on June 6, 2005, Dr. Dela Rosa noted that Plaintiff did not follow up

on the treatment recommended at her first visit.  (R. 252).  The doctor reviewed the December 7,

2004 MRI and reported that it revealed "C6-7 small broad posterior cervical disc bulge or

protrusion, mild to moderate central canal stenosis without evidence of cord compression, and

mild disc bulge at C5-C6."  *Id.*  Dr. Dela Rosa also concurred with Dr. Abud's findings that the

MRI of the lumbar spine was normal.  *Id.*

Dr. Dela Rosa also conducted a physical exam of plaintiff during the June 6 visit.  (R.

253).  Plaintiff's gait and balance were normal.  *Id.*  She experienced pain in her cervical and

lumbar muscles and her range of motion was slightly reduced.  *Id.*  The range of motion in her

6

extremities was normal but she experienced tenderness in her medial elbows, left medial

malleolus, and Achilles tendon.  *Id.*  Once again, the doctor recommended trigger point injections

and physical therapy.  (R. 254).

### 6. Dr. R. Bagner

Plaintiff was examined by Dr. Bagner on May 22, 2006.  (R. 230).  The doctor noted that

Plaintiff had no difficulty getting on and off the examining table and she needed no assistance

getting dressed.  *Id.*  According to the doctor, Plaintiff experienced pain in her shoulders and

cervical/lower back regions upon movement, but she had a normal range of motion.  (R. 231).

Similarly, Plaintiff experienced pain on movement of her knees and ankles, particularly her left

ankle.  *Id.*  The doctor concluded that this pain was due to degenerative arthritis.  *Id.*  Based on

the exam, Dr. Bagner determined that Plaintiff's ability to lift/carry was affected by her

impairment.  (R. 234).   The doctor reported that Plaintiff could both occasionally and frequently

lift/carry 20 pounds.  *Id.*

Dr. Bagner also found that Plaintiff's ability to stand/and or walk was affected by her

impairment and as a result she could only stand and/or walk for at least 2 hours in an 8 hour

workday.  *Id.*  This was a notable change from Dr. Raza's 2004 assessment, which concluded that

Plaintiff could stand/walk for about 4 hours total in an 8 hour work day.  However, Plaintiff's

ability to sit and push/pull was not affected by her impairment.  (R. 235).  He also noted that, an

X-Ray revealed an old fracture and a healing fracture in Plaintiff's right foot.  (R. 238).

### 7. Dr. Steven Maffei

Plaintiff was referred to Dr. Maffei by Dr. Raza for a podiatric evaluation and treatment

on January 26, 2006.  (R. 247).  Dr. Maffei diagnosed Plaintiff with arthritis of the left ankle, an

overlapping second toe on her right foot, pes planus of the left foot, and bilateral ankle lipoma. *Id.* He ordered an MRI on her right foot which revealed no evidence of a fracture but identified a minimal heel spur and evidence of previous surgery to the second metatarsal. (R. 248).

### 8. Dr. Paul Lee

On July 18, 2006, Dr. Lee diagnosed Plaintiff with cervical radioculopathy at C6-7 and arthritis. (R. 250). Based on her diagnosis, he concluded that Plaintiff could perform sedentary work and that her physical limitations inhibited her ability to stand, walk, climb, stoop, bend, lift and use her hands. *Id.* The record does not contain any treatment notes or reports from Dr. Lee.

### c. Medical Evidence of Plaintiff's Mental Impairments Considered by the ALJ

### 1. Dr. A. Gordon

On June 18, 2004, Dr. Gordon conducted a mental status examination of Plaintiff. (R. 171). The doctor noted that her overall appearance was neat. *Id.* However, her cognitive functioning was not in line with what the doctor expected from her physical presentation. (R. 172). When asked what year it was, Plaintiff responded "194" and thought that the President of the United States was Reagan. (R. 171). Plaintiff did not know the correct date and when asked which State she was in, she responded Trenton. *Id.* Dr. Gordon reported that Plaintiff stated that her appetite was not good and that she had trouble sleeping. *Id.* Plaintiff attributed recent weight loss and bowel problems to her nerves. *Id.* The doctor further reported that Plaintiff had difficulty with arithmetical problems concerning the four basic functions, understanding proverbs, and general knowledge. (R. 172). Plaintiff informed the doctor that she was very depressed, but not suicidal, and that she sometimes heard voices and saw people when no one else was home. *Id.* Although Plaintiff primarily speaks Spanish, no interpreter was present

during the examination.

### 2. Dr. Thomas Harding's Mental Residual Functional Capacity Evaluation

On December 21, 2004, Plaintiff received a mental residual functional capacity evaluation. (R. 206). Dr. Harding determined that Plaintiff's ability to carry out detailed instructions, to accept instructions and respond appropriately to criticism from supervisors, and to travel to unfamiliar places/use public transportation was moderately limited. (R. 204-05). He concluded that Plaintiff would be capable of performing past relevant work. (R. 206).

### 3. Dr. Jan Cavanaugh

Dr. Cavanaugh conducted a psychiatric evaluation of Plaintiff on May 17, 2006. (R. 223). The doctor reported that Plaintiff's thought processes were coherent and goal directed. (R. 224). There was no evidence of hallucinations, delusions or paranoia during the exam. *Id.* Dr. Cavanaugh noted that Plaintiff appeared depressed and tearful and her mood was dysthymic. *Id.* According to the doctor, Plaintiff's attention and concentration were mildly impaired, but she was able to perform simple calculations and count. (R. 225). The doctor also found that Plaintiff's recent and remote memory skills were mildly impaired and her intellectual functioning was estimated to be in the below-average range. *Id.* Additionally, Plaintiff's judgment was reported to be fair and her insight poor. *Id.*

Dr. Cavanaugh reported that Plaintiff is able to dress herself and bathe but has difficulty combing her hair due to pain. *Id.* Plaintiff could not cook but she could clean, do laundry and shop. *Id.* Plaintiff was no longer able to drive, could not take public transportation and could not manage her money. *Id.* She reported that she was generally isolated during the day and spent her days watching tv and lying down. *Id.*

The doctor surmised that her "vocational difficulties" were caused by a combination of her physical condition and her mental state.  *Id.*  Dr. Cavanaugh diagnosed Plaintiff with depressive disorder and personality disorder with dependent features and recommended a course of individual psychotherapy with appropriate medication to treat her condition.  (R. 226).

## II.   LEGAL STANDARD FOR DISABILITY BENEFITS

Plaintiff's eligibility for DIB and SSI is governed by 42 U.S.C. §§ 423 and 1382(a)-(b), respectively.  A claimant is eligible for DIB and SSI if he meets the disability period requirements of 42 U.S.C. § 416(I), and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A person is disabled for these purposes if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  The claimant bears the burden of establishing these first two requirements, and the failure to meet this burden automatically results in a denial

of benefits.  *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("listings").  20 C.F.R. § 404.1520(d).  If Plaintiff's impairment or combination of impairments meets or equals a listed impairment, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id.*   If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment.  20 C.F.R. § 404.1520(e).  "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments."  20 C.F.R. § 404.1520(e).  If the claimant is found to be capable of returning to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  20 C.F.R. § 404.1520(e).  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.  To determine the physical exertion requirements of work, jobs are classified as sedentary, light, medium, heavy, and very heavy.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work.  20 C.F.R. § 404.1520(f).  If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits.  *Yuckert*, 482 U.S. at 146-47 n.5.

## III.    STANDARD OF REVIEW

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Plummer v.*

*Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  "[M]ore than a mere scintilla," substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)) (internal quotation marks omitted).  The inquiry is not whether the

reviewing court would have made the same determination, but, rather, whether the

Commissioner's conclusion was reasonable.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.

1988).  Substantial evidence, therefore, may be slightly less than a preponderance.  *Hanusiewicz*

*v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality.

*Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  As such, "a court must take into account

whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp.

277, 284 (D.N.J. 1997) (internal quotations omitted).  The Commissioner has a corresponding

duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting

evidence, he must adequately explain in the record his reasons for rejecting or discrediting

competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  As the Third

Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to

meaningful court review:

"Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the

weight he has given to obviously probative exhibits, to say that his decision is supported by

substantial evidence approaches an abdication of the court's duty to scrutinize the record as a

whole to determine whether the conclusions reached are rational." *Gober v. Matthews*, 574 F.2d

772, 776 (3d Cir. 1978) (internal quotations omitted).  Nonetheless, the district court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."

*Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

IV.    **DISCUSSION**

        **A. The ALJ's Decision**

    In his decision (R. 16-24), the ALJ properly followed the requisite sequential evaluation and considered all relevant evidence put before him.  The decision includes evaluation of Plaintiff's subjective complaints as well as the various medical reports related to her physical and mental conditions.

    At step one of the sequential evaluation, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date.  (R. 18).  At step two, the ALJ concluded that the evidence established the existence of "severe" impairments, specifically, "cervical disc herniation with radicular symptoms, chronic lumbar pain, history of fracture of the right ankle, degenerative arthritis and depressive disorder."  *Id.*  Although the ALJ found Plaintiff's impairments to be severe, the ALJ determined, at step three, that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I."  *Id.*  Specifically, the ALJ stated that:

> The undersigned has considered whether the claimant's physical impairments meet or medically equal Listing 1.00 et seq. but after due consideration determines that her impairments are not of sufficient severity to meet those listings.
>
> The undersigned also finds that the claimant's depression is not of sufficient severity as to meet or medically equal Listing 12.04.  In making this finding, the undersigned notes that the claimant has the following degree of limitations in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart

P, Appendix 1: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of deterioration.  (R. 19).

At step four, the ALJ considered all of Plaintiff's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including opinion evidence.  *Id.*  Specifically, the ALJ found:

> [T]hat the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.  In making these findings, the undersigned has considered the following factors pursuant to SSR 96-7p: the claimant's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment other than medication that the claimant receives or has received for pain relief; any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  The [ALJ] notes that the claimant is capable of caring for her personal needs (Exhibit 9E) and can ambulate without an assistive device.  Although she currently takes pain medication, at the time that disability was initially alleged, the claimant was taking only nonprescription pain relievers on an "as needed" basis.  The record indicates that the claimant has not always been complaint with treatment and actually shows very little ongoing treatment for either her physical or mental impairments.  The claimant indicated to an examining physician that prolonged walking, climbing stairs, lifting and carrying all aggravated her pain.  She did not report difficulty with prolonged sitting until the formal hearing in this matter, and in fact, one physician noted that she was "not at all uncomfortable in the seated [position] during the interview." (R. 23).

Based on this evidence, the ALJ found that Plaintiff had a:

> residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, to stand and/or walk for 2 to 4 hours and sit for 6 hours in an 8-hour workday, to occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; and to occasionally reach overhead.  The claimant can also understand, comprehend and carry out only simple instructions and is limited in her ability to make work related decisions.  (R. 24).

As such, the ALJ concluded that Plaintiff's residual functional capacity permitted her to perform past relevant work as an assembler.[2]  The ALJ was informed by the testimony of a vocational expert given at the formal hearing.  The vocational expert testified that Plaintiff's past work as an assembly line worker constituted light, unskilled work.  (R. 23).  This testimony was "consistent with the Directory of Occupational Titles and the claimant's testimony at the formal hearing, which indicated that she sat at a table on an assembly line."  (R. 24).  The ALJ further bolstered his opinion by noting that "neither the claimant, vocational expert nor the Dictionary of Occupational Titles indicates that the claimant's previous work required more than occasional climbing of ramps and stairs, stooping, kneeling, crouching or crawling; or more than occasional overhead reaching."  *Id.*  Furthermore, the ALJ added "that even when the claimant's ability to stand was restricted to 2 hours in an 8 hour workday, she was still capable of performing this work."  *Id.*

Because the ALJ found Plaintiff capable of performing her past relevant work, it was not necessary to proceed to step five of the analysis and therefore the ALJ found Plaintiff not disabled under the Social Security Act.

**B. Plaintiff's Arguments**

**1.  Challenges to Step Three**

Plaintiff challenges the ALJ's analysis at step three.  Specifically, Plaintiff argues that the ALJ (1) did not properly compare Plaintiff's mental and physical impairments to the Appendix 1 listings and (2) failed to make a comparison between the combination of Plaintiff's impairments

---

[2]According to the Vocational Expert, Plaintiff's other jobs were not "relevant from a standpoint of duration or earnings" to be considered past relevant work.  (R. 283).

15

and the listings.

The Third Circuit does not require an ALJ to follow a particular framework in conducting a step 3 analysis "so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm'r of Soc. Security*, 274 Fed. Appx. 159, 162 (3d Cir. 2008) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). However, the regulations require the Plaintiff to provide sufficient evidence to prove that her impairment meets or equals a listing. *Id.* (quoting *Burnett v. Apfel*, 2002 F.3d 112, 120 n.2 (3d Cir. 2000)); 20 C.F.R. § 404.1520(d). "Furthermore, 'for a claimant to show his impairment matches a listing, it must meet *all* of the specified medical criteria." *Garrett*, 274 Fed. Appx. at 162 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original)).

The Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff failed to meet or equal an Appendix 1 listing. In regard to Plaintiff's physical impairments, the ALJ's statement that Plaintiff's impairments are not of sufficient severity to meet any of the listings found in 1.00 is a sufficient explanation in light of the lengthy review of the medical record. The medical evidence considered by the ALJ does not reveal that Plaintiff suffers from any impairment listed in 1.00. Furthermore, Plaintiff has not presented the Court with evidence demonstrating that any of her physical impairments meet the listing criteria.

Similarly, the ALJ's finding that Plaintiff's mental impairments do not meet either a 12.04(a) or (b) listing is supported by the record. The doctor who performed the psychiatric review technique specifically found that "a medically determinable impairment is present that does not satisfy the diagnostic criteria" of listing 12.04(a). (R. 211). Additionally, in evaluating the criteria in listing 12.04(b), the doctor determined that Plaintiff suffered from only mild

restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of deterioration.  (R. 218).  Plaintiff would need to demonstrate that she had either marked or extreme restrictions/difficulties to satisfy 12.04(b).  *Id.*  Furthermore, the ALJ specifically noted that he relied on this evidence when assessing Plaintiff's mental impairments.  Consequently, the Court finds that the ALJ's analysis is not beyond meaningful judicial review.   As such, the ALJ's determination with respect to Listing 1.00 and 12.04 must be sustained.

As to Plaintiff's second step 3 argument, she is correct that the ALJ must consider her impairments in combination.  *See* 20 C.F.R. 404.1526 ("If you have a combination of impairments, no one of which meets a listing . . . we will compare your findings with those for closely analogous listed impairments.  If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.")  The Plaintiff argues that the ALJ should have given more weight to the combined effect of Plaintiff's physical and mental impairments.  However, the Court finds that the ALJ fulfilled his obligation to evaluate Plaintiff's impairments in combination by stating "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments ..."  (R. 18).  *See Davis v. Commissioner*, 105 Fed. Appx. 319, 324 (3d Cir. 2004) (finding that the ALJ fulfilled obligation to consider combination of impairments where ALJ reviewed evidence and concluded that "[t]he medical evidence indicates that the claimant's impairments are not severe enough to meet or medically equal one of the impairments listed in Appendix 1."); *but see Torres v. Commissioner*, 279 Fed. Appx. 149, 151-52 (3d Cir. 2008) (finding that the combination analysis

17

was not sufficient because the "ALJ's entire combination analysis consisted of one conclusory

paragraph: Regarding steps two and three, the evidence establishes the existence of a 'severe'

impairment involving left-eye blindness, diabetes, hepatitis C ... but does not disclose any

medical findings which meet or equal in severity the clinical criteria of any impairment listed in

Appendix 1, Subpart P to Regulations No. 4").  Moreover, the Plaintiff has not indicated how the

combination analysis she desires would differ from the one provided by the ALJ.  *Williams v.

Barnhart*, 87 Fed. Appx. 240, 243 (3d Cir. 2004).  As such, the Court finds that the ALJ's

combination analysis must be sustained.

### 2. Challenges to Step Four

Plaintiff argues that at step four of the sequential evaluation the ALJ (1) failed to

articulate an evidentiary basis for his RFC determination and (2) did not properly compare

Plaintiff's RFC with her past relevant work.

The Court finds that the ALJ articulated an evidentiary basis for his RFC determination

and that determination is supported by substantial evidence.  An RFC determination reveals the

most a person can do despite her limitations.  20 C.F.R. § 404.1545(a).  In assessing RFC, the

ALJ must consider all relevant evidence including "medical records, observations made during

formal medical examinations, descriptions of limitations by the claimant and others, and

observations of the claimant's limitations by others."  *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d

Cir. 2001).  The ALJ's RFC determination "must be accompanied by a clear and satisfactory

explication of the basis on which it rests."  *Id.*  (citing *Cotter v. Harris*, 642 F.2d 700, 704 (3d

Cir. 1981)).

In his analysis, the ALJ states which evidence he gave particular weight to and which he

18

discounted, and explained his reasons. *See, e.g.*, R. 19 (the ALJ noted that "Dr. Raza's opinion is contradictory as far as whether the claimant is capable of prolonged sitting and that Dr. Raza's opinion regarding claimant's ability to reach, handle and finger is conclusory, since he does not note any objective evidence that would support this restriction") and R. 20 ("the undersigned concurs with Dr. Bagner's determination and notes that the claimant could stand and/or walk for 4 hours at the time that disability is first alleged, but that as of May 2006, the claimant could walk and/or stand for 2 hours, based on radiological evidence of a fracture in the right foot.")

Moreover, the ALJ's RFC assessment was based on five pages of detailed analysis of the medical evidence. This analysis is supported by notes from consultative examinations performed by Plaintiff's own treating physicians as well as state agency doctors; analyses of several MRIs; observations of Plaintiff's demeanor and ability during the examinations; various doctor's treatment recommendations; and Plaintiff's own statements regarding her condition and daily activities. (R. 19-23). As such, the Court finds, based on the medical evidence, that the ALJ's RFC finding is supported by the substantial evidence.

As to Plaintiff's second step 4 argument, the Court finds that the ALJ did not properly compare Plaintiff's mental RFC with her past relevant work. The Social Security regulations instruct the ALJs to compare the Plaintiff's RFC with the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1560(b). Adequate documentation regarding the work demands that affect the claimant's physical or mental limitations must be provided. SSR No. 82-62. "For a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people,

19

etc. in order to determine if the claimant's mental impairment is compatible with the performance of such work." *Id.*

Here, the ALJ compared Plaintiff's "residual functional capacity with the physical and mental demands of this work, [and found] that the [Plaintiff] is capable of this past work (assembly line worker), given her residual functional capacity for unskilled work at an exertional level slightly greater than sedentary but less than light." (R. 24). In assessing Plaintiff's past relevant work, the ALJ noted that he considered the testimony of the vocational expert and found it to be consistent with the Dictionary of Occupational Titles as well as the Plaintiff's testimony; all of "which indicated that she sat at a table on an assembly line." *Id.* The ALJ continued with a comparison of Plaintiff's physical limitations to her past relevant work but did not provide an explanation as to how Plaintiff's inability to "understand, comprehend and carry out only simple instructions and [her limited ability] to make work related decisions" did not impede her ability to perform her past relevant work. (R. 19). Moreover, the Court notes that during the formal hearing, the ALJ did not develop the record regarding the impact of Plaintiff's mental impairments on the performance of the particular duties required by her past relevant work as an assembly line worker.[3]

The Court finds that the record does not provide a sufficient description of the particular job duties required of an assembly line worker "which are likely to produce tension and anxiety" in order to determine if Plaintiff's mental impairments are compatible with her past relevant

---

[3]In his evaluation, Dr. Harding determined that, despite her mental impairments, Plaintiff was capable of continuing her past relevant work. (R. 206). However, it is not clear if the doctor considered all of her jobs or only some of her jobs to be past relevant work. Because the Vocational Expert chose only assembly line worker as her past relevant work, the Court does not find Dr. Harding's statement to be determinative of this issue.

work as an assembly line worker.

V.     **CONCLUSION**

The Court finds that the Commissioner's final decision is not completely supported by substantial evidence.  As such, the Court remands the case to further develop the record to assess the impact of Plaintiff's mental impairments on her ability to conduct her past relevant work.